Alexander *vs.* Alexander *et al.*

MARY J. ALEXANDER, executrix, plaintiff in error, *vs.* JAMES W. ALEXANDER, JR., *et al.*, defendants in error.

1. Implied trusts are not within the statute of frauds, and the Courts will hear parol evidence, showing the facts from which they are sought to be implied.

2. Where one holds the legal title to property, but the same has been paid for by or with the funds of another, the law implies a trust.

3. Where a guardian has purchased property with the funds of his wards, and has, by his written and sworn answer to a bill in equity, so declared, and that he holds it for their use, the wards may recover the property in a Court of law, notwithstanding it may appear that the guardian took the deed to himself, making no mention of his wards.

4. Receipts in full by wards to their guardian, which, in express terms, discharge the guardian from all liability, may be explained by parol, and will only cover such matters as were intended to be covered thereby.

5. A receipt in full by a ward to his guardian, discharging him from all claims the ward may have against him, in law or in equity, does not convey to the guardian any title to the land held by the guardian for him, even though the same be held under an implied trust, especially if, at the time of the receipt, the ward has reason to believe that the title of the land is to the guardian as guardian.

Claim. Implied trust. Parol evidence. Statute of frauds. Guardian and ward. Receipt. Before Judge HARRELL. Early Superior Court. April Term, 1872.

Mary J. Alexander, as the executrix of Martin T. Alexander, deceased, advertised certain real estate for sale, as the property of her testator, on the first Tuesday in December, 1871. Columbus C. King and James W. Alexander, Jr., filed a claim to said land, alleging that the same was the property of James W. Alexander, Jr., Columbus C. King and his wife, Caledonia King, and of Josephine Alexander.

Upon the trial of the issue formed by the aforesaid claim in the Superior Court, the following evidence was introduced for the executrix, to-wit:

1st. A deed from Anthony Hutchins to Martin T. Alexander, covering the property in dispute, dated July 20th, 1863, and purporting to have been made upon consideration of the payment of $15,750. Recorded April 3d, 1872.

2d. An agreement of settlement of all matters in dispute between Caledonia King, daughter of A. C. S. Alexander, deceased, and Martin T. Alexander, administrator upon the estate of her father, and guardian of his children, touching said estate, by which said Martin T. Alexander is to pay

$1,000 cash, and $500 in October next, with interest from date. In consideration of which John B. Mulligan, as trustee for Caledonia King, Columbus C. King, her husband, and Caledonia King, herself, release all other rights which they have held against said Alexander, in law or in equity, as administrator or guardian, and agree that the cases now in suit be entered settled, and all claims not in suit to be hereby settled in full. Dated June 26th, 1869.

3d. The following release, to-wit:

" GEORGIA—EARLY COUNTY:

" This instrument witnesseth that, in consideration of fifteen hundred dollars, ($1,500,) paid me by M. T. Alexander, individually, I relinquish and convey unto him all my interest or claim which I, in right of myself, may have, either at law or in equity, in the estate of A. C. S. Alexander, and that I hereby acknowledge myself fully satisfied for all claims I may have against said M. T. Alexander, as administrator or guardian of said estate, or in anywise on account of his connection with or management of said estate, and the case pending in equity in said county in favor of myself *vs.* said Martin T. Alexander, administrator or guardian, as aforesaid, is hereby settled, and to be so entered of record.

" Witness my hand and seal this May 18th, 1869.

(Signed)          " J. W. ALEXANDER, JR." [L. S.]

Mary J. Alexander, sworn: Is the executrix of M. T. Alexander, deceased; is his widow; the lands now in dispute were formerly in possession of A. C. S. Alexander, deceased, the father of claimants, on whose estate M. T. Alexander was administrator, and as such sold the said property at public sale; Anthony Hutchins became the purchaser and subsequently sold it to M. T. Alexander, and made the deed read in evidence. M. T. Alexander held the land as the property of the children, two of whom are the claimants, for whom he was guardian from the time the land was purchased by Anthony Hutchins until he settled off with them; after that time, he held the land and claimed it as his own; he was in

possession of it, as his own, at the time of his death, and was also in possession of the land at that time as guardian for Josephine Alexander, he never having settled with her for her interest in the land.

The following evidence was introduced for claimants:

John B. Mulligan, sworn: Witness knows the land in dispute; it was the property of A. C. S. Alexander, deceased; was present when it was sold by M. T. Alexander, as administrator; it was sold at public sale at Blakely on a regular sale day; Anthony Hutchins was the crier at the sale and bid off the property for M. T. Alexander; has heard M. T. Alexander say several times that James W. Alexander was entitled to and owned one-fourth of the property now in dispute; it was prior to May 18th, 1869; does not recollect having heard him since that time use the exact language that James W. Alexander was entitled to one-fourth of the land, but has heard him say that he held the land as collateral security against the Ransom debt, and that if he did not have it to pay, James W. Alexander and the other heirs would have their interest in the land. The $1,500 mentioned in the receipt given by James W. Alexander was paid in notes held by M. T. Alexander, as guardian for James W. Alexander and his sister Caledonia King, part contracted for rent of land and part for the sale of personal property belonging to the wards; James W. Alexander rented the place from M. T. Alexander, as the guardian of himself and sister, and was in possession from the close of the war until January 1st, 1872.

Brinkly Chancy, sworn: Witness contracted a debt for iron with James W. Alexander; in 1866, M. T. Alexander agreed to be responsible for it, as he was his guardian and was indebted to him; in 1870, witness applied to M. T. Alexander for payment; he refused, saying he had settled with James W. Alexander, and did not owe him anything, but if he did not have to pay the Ransom debt, James W. Alexander and the heirs would still have their interest in the A. C. S. Alexander place, but if the Ransom debt had to be paid they would have nothing; this was said to witness in

Alexander *vs.* Alexander *et al.*

the fall of 1870, a month or two before M. T. Alexander died.

Claimants introduced the Tax Digest of 1867, 1868 and 1869, showing that M. T. Alexander gave in the property claimed, during those years, as guardian for claimants and his other wards, children of A. C. S. Alexander. Claimants introduced a portion of an answer made by M. T. Alexander to a bill filed in equity by a portion of the distributees of the estate of A. C. S. Alexander in March, 1867, in which he sets up the fact in his defense, that the land in dispute was sold by order of Court on the first Tuesday in January, 1863, and purchased by him through his agent, Anthony Hutchins, for the use of and expressly for his wards, the children of the said A. C. S. Alexander, deceased. The executrix introduced the Tax Digest of 1870, showing that Martin T. Alexander returned the property for that year in his own name.

The Court charged the jury as follows, to-wit: "The question for the jury to decide in this case is, whether the lands involved in this controversy are the property of the estate of M. T. Alexander, or of the claimants, and this issue you are to determine from the evidence submitted to you. The executrix introduced a deed from A. Hutchins to M. T. Alexander, dated July 20th, 1863, and insists that he went into possession of the land under that deed as his own property. If this is established by the evidence to your satisfaction, she is entitled to hold it unless the claimants show a better title. The claimants show no written title, but insist that they have established facts by proof, which invests them with the title as against the written title of the executrix. They insist:

"1st. That the deed under which M. T. Alexander held the land was void, because he purchased the land at his own sale as administrator of A. C. S. Alexander, deceased, who was the father of James W. Alexander, one of the claimants, and of Caledonia King, in whose right Columbus King is another, and that his possession of the land was not in his own right or claim, but as trustee for them. If you believe, from the

evidence, ·that M. T. Alexander purchased and paid for the land, whether from another or at his own sale as administrator, it vests the title in him subject to the right of creditors of the estate upon proper proof, or the heirs of A. C. S. Alexander within a reasonable time after they attain their majority, to set aside and make void the sale as a matter of right. The heirs of Alexander cannot, however, do this in this proceeding.

"They insist, 2d, that the deed to M. T. Alexander was fraudulent and on this account vested no title in him. They can attack the deed on this account in this proceeding, and if you believe, from the evidence, that the deed under which M. T. Alexander held the land was fraudulent, that he procured it to be made for the purpose of defrauding them or any one else, then such deed did not vest the title to the land in him as against them. On the contrary, if it was not fraudulent, but made and held in good faith by M. T. Alexander, the title would vest in and belong to him, subject to the law, as will be given to you in the following charge.

" 3d, The claimants insist that although the deed to Alexander is an absolute deed, the consideration therefor was paid by him with funds belonging to them, and that, although holding an absolute deed, he was only a trustee for them. If you believe, from the evidence, that the entire consideration paid by M. T. Alexander for the land was the funds belonging to claimants, and that he held the same as their trustee and not in his own right, then the land is theirs, and you can, in this case, so mould your verdict as to vest the title in them. But if it was not so paid for with funds belonging to them, but was paid for by Alexander with his own money, and he bought the same as his own property, you should so find it.

"The executrix also introduced certain receipts, which are before you, signed by claimants, which, she insists, released M. T. Alexander from all claims whatever in relation to the estate of A. C. S. Alexander, including this land, even if they had an interest in it. The claimants insist that the

land was not included in the receipts but only other property. That is a question for you to determine from the evidence. If there was a full and fair settlement and did include the land, they are bound by the settlement. If it did not include the land, then determine from the evidence and from the law as I have given it to you in charge the other point, to whom the land belongs. If you believe that M. T. Alexander held the land for the claimants, and that M. T. Alexander has so acknowledged it, and acknowledged even that the money of claimants, his wards, paid for the land, then the said M. T. Alexander held the land for the use of the claimants; and if the evidence shows that the claimants have not parted with their interest in the land, then you can find for claimants.

" If you believe that M. T. Alexander took a title to the land from Anthony Hutchins in 1863, and kept it a secret and never recorded it until the day of trial, to-wit: 3d of April, 1872, and that claimants had no notice of how the deed was made out, and were acting under the statements of M. T. Alexander that he held it for claimants, they are not in default for failing to proceed against M. T. Alexander to correct the deed and assert their interest, but are allowed now to set up their interest in this proceeding. They can set it up if Alexander held the title fraudulently, or if he was not the *bona fide* holder, but held it as trustee for them. Land in Georgia must be conveyed by deed regularly executed, and a mere receipt of a ward or heir for all rights and accounts that he has against the guardian or administrator does not, of itself, convey title to land, but can only be evidence of an agreement to convey title, if the facts clearly show that intention. It may if it includes the land, otherwise not."

The jury returned a verdict in favor of the claimants. Mary J. Alexander, the executrix, moved for a new trial upon the following grounds, to-wit :

1st. Because the Court erred in admitting the evidence of John B. Mulligan and Brinkly Chancy, against the objections of said executrix.

2d. Because the Court erred in admitting in evidence the part of the sworn answer of M. T. Alexander to the bill, in evidence, against the objections of said executrix.

3d. Because the jury found contrary to law and evidence.

4th. Because the Court erred in its charge to the jury.

The motion for a new trial was overruled, and Mary J. Alexander, executrix, excepted upon each of the aforesaid grounds and assigns said rulings as error.

RICHARD SIMS; H. FIELDER; R. H. POWELL, for plaintiff in error. 1st. Equitable interest cannot be set up on trial of claim: 8th Ga. R., 258; 20th *Ibid.*, 148; 30th *Ibid.*, 450. 2d. All evidence to contradict the receipts was illegal.

THOMAS F. JONES; FLEMMING & RUTHERFORD, for defendants. Receipt for share in estate, parol evidence admissible to show whether in full: 27th Ga. R., 78. Parol evidence admissible to show what land is covered by a deed: 20th Ga. R., 689; 18th *Ib.*, 181; 25th *Ib.*, 383. Terms general, particulars shown by parol: 30th Ga. R., 482. Receipts exceptions to general rule as to admissibility of parol evidence: 3d Ga. R., 210; 5th *Ib.*, 373. Parol evidence as to matters outside of contract admissible: 14th Ga. R., 429. Parol evidence admissible to show anything consistent with the instrument: 28th Ga. R., 98; 21st *Ib.*, 526.

MCCAY, Judge.

Nothing is better settled than that an executor or administrator who buys property at his own sale, either directly or indirectly, holds it subject to the option of the *cestui que trusts*, to affirm or disaffirm the sale. The purchase by the trustee is *prima facie* a fraud, and however the formal title may be, he holds the property as trustee, under the implied undertaking which the law casts upon him.

One of the instances given by our Code (section 2290) of an implied trust is when, from any fraud, one person obtains the

title to any proper which rightfully belongs to another: See, also, 39*th Georgia Reports*, 672; 23*d Ib.*, 151; 8*th Ib.*, 236. The administrator is still an implied trustee for the *cestui que trusts*.

Implied trusts are expressly excepted from the Statute of Frauds requiring trusts of lands to be in writing; and our Code (section 2291) declares that in all cases where a trust is sought to be implied, the Courts may hear parol evidence of the nature of the transaction, or the circumstances, or conduct of the parties, either to imply or rebut a trust.

There was, then, no error of the Court in any of the rulings permitting parol evidence, to show that though the naked legal title to this land was in the administrator, yet in fact it was the property of the plaintiffs; that the administrator had bought it at his own sale for their use. His statements to that effect—his giving it in for taxes as the property of the minors—are each legitimate acts, going to show, that while the legal title was in him, he was, in fact, an implied trustee for them. But the answer to the bill in equity is not parol evidence. It is a written statement by the administrator that this land was the property of his wards. The proof of the fact of title by this written statement under the hand, nay, *under the oath*, of the administrator, would be good evidence even of an express trust. What more could be asked? A man has a title to land; he makes a written statement, signs and swears to it, that the land is, in fact, the property of another. This is no parol proof; it is written, and completely within the Statute of Frauds, and within section 2284 of the Code declaring that express trusts must be created or *declared* in writing.

Under our law, the owner of a perfect equity may sue at law, and if the trust be complete, either by the parol or written proof, the right of the plaintiffs to sue is complete.

The rule is undoubted that receipts are not conclusive: Code, 3754. And it is just such receipts, to-wit: from wards to guardians, that are properly within the rule: 38 *Georgia*, 544; 34th, 315; 29th, 585; 5th, 373; 3d, 210; 11th, 195.

See, also, *Wooten vs. Benton*, 15 *Georgia*, 570. The parol evidence was most material here. Were it definitely understood at the time, that this administrator had bought the land at his own sale, it was competent for the wards of full age to agree that he might keep it as his own, he accounting to them for the price, and it was therefore of the highest importance to show that at that time they were resting under the belief that he had bought the land not for himself, but for them. And that he was holding it not as land he had bought and was to pay for, but as the land of his wards. His answer to the bill was strong, conclusive proof of this, especially as it appears from the record that it was not disclosed until at the trial that any deed was taken to the administrator in his own name. His statements, his acts, and especially his answer, all went to show that he had taken the title to himself as guardian. Upon the whole we think the evidence properly admitted and the verdict right.

Judgment affirmed.